UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ELIZABETH LYNCH, SIMON LYNCH, ERIC LYNCH,
INFANTS, UNDER THE AGE OF 14, BY THEIR
MOTHER AND NATURAL GUARDIAN JESSICA
LYNCH AND JESSICA LYNCH INDIVIDUALLY
AND RICHARDO LYNCH                                         08-cv-00080
                       Plaintiffs,                       (WCC)


    -against-


CITY OF MOUNT VERNON, THE MOUNT VERNON
POLICE DEPARTMENT AND POLICE OFFICERS
"JOHN DOE", "RICHARD ROE", FICTITIOUS NAMES,
TRUE NAMES UNKNOWN ,
                   Defendants.
-------------------------------------------------------------------x
-------------------------------------------------------------------x

ROSLEE HAMILTON, an infant under the age
of 14 years By her father and natural
guardian FABIAN McCALLA and FABIAN McCALLA,


                                                      08-cv-00083
                   Plaintiffs,                        (WCC)
    -against-

CITY OF MOUNT VERNON, THE MOUNT VERNON
POLICE DEPARTMENT AND POLICE OFFICERS
"JOHN DOE", "RICHARD ROE", FICTITIOUS NAMES,
TRUE NAMES UNKNOWN ,
                   Defendants.
-------------------------------------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………    4

POINT I

THE LEGAL STANDARDS
    A. The Instant Motion ………..……………………….    5
    B. Motion Pursuant to Fed. R. 12(c)…………………    6
    C. Motion Pursuant to Fed. R. 56………………………    6
    D. Qualified Immunity…………………………………    7

POINT II

THE FACTS AS REFELECTED IN THE WARRANT DOCUMENTS
AND AS TESTIFIED TO BY THE PLAINTIFFS………………….    9

POINT III

THE DEFENDANTS DID NOT VIOLATE THE PLAINTIFF'S
CONSTITUTIONAL RIGHTS……………………………………    11

*A.*    *THE OFFICERS ENTRY INTO THE HOME BY FORCE
    WITHOUT KNOCKING WAS OBJECTIVELY REASONABLE
    AS THEY RELIED ON THE "NO KNOCK" WARRANT ISSUED
    BY THE CITYCOURT JUDGE…………………………….………..*    *11*

*B.*    *THE OFFICERS ACTIONS OF HAVING GUNS DRAWN AND
    HANDCUFFING TWO ADULT MALES, SECURING THE
    PREMISES WHILE THEY SEARCHED, WAS REASONABLE
    AND DOES NOT AMOUNT TO A VIOLATION OF THE
    PLAINTIFF'S CONSTITUTIONAL RIGHTS…………………………*    *12*

*C.*    *BY LAW THE OFFFICERS CAN FORCE OPEN ANY DOOR OR
    ITEM WHERE THE ITEMS SUBJECT TO THE SEARCH
    WARRANT COULD BE LOCATED, THUS THEY DID NOT
    VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS…………*    *18*

POINT IV

IT WAS OBJECTIVELY REASONABLE FOR THE OFFICERS TO
BELIEVE THAT THEIR ACTIONS - ENTERING INTO THE HOME
WITH GUNS DRAWN, SECURING PERSONS IN THE HOME WITH
HANDCUFFS AND CONDUCTING THEIR SEARCH BY FORCING
OPEN DOORS AND CLOSETS WHERE NARCOTICS AND WEAPONS
COULD BE STASHED - DID NOT VIOLATE ANY CLEARLY
ESTABLISHED RIGHTS OF THE PLAINTIFFS, THUS THEY ARE
ENTITLED TO QUALIFIED IMMUNITY ………………………….    20

POINT V

PLAINTIFF'S CONSPIRACY CLAIM MUST FAIL ......................... 21

POINT VI

THE CITY OF MOUNT VERNON IS ENTITLED TO
SUMMARY JUDGMENT............................................................ 22

POINT VII

PLAINTIFF'S STATE LAW CLAIMS SHOULD FAIL........................ 22

CONCLUSION............................................................................ 23

## PRELIMINARY STATEMENT

It is clear from the warrant documents Plaintiffs incorporate into their respective complaints by reference and those to which the City is requesting this Honorable Court take judicial notice of - that - the Mount Vernon Police Department engaged in a legal search and temporary seizure of all those present at 58 South 14th Avenue on December 15, 2006. While this type of police activity is understandably not welcomed by the public, such searches conducted pursuant to search warrants issued by the Judges of our Courts, are essential to protecting the health, welfare and safety of the population at large. The search warrant documents clearly delineate the fact that the officers secured a search and seizure warrant for the premises and certain persons who were believed to be at the subject premises and suspected to have weapons and drugs. The warrant documents gave the officers the authority to enter without first announcing themselves. From the Plaintiff's own testimony, the Officers did not physically abuse any of the occupants of the home, did not verbally abuse the occupants and did not unreasonably search anyone's body that day (no strip searches etc.). Plaintiff's testimony reveals that they take issue with the fact that the Officer's entered with their guns exposed, without first knocking and kept their guns out, broke a few room and closet doors that were locked and ransacked the home by throwing items out of dresser drawers to the floor. These allegations do not rise to the level of a constitutional wrong as discussed below and for that reason the Defendants are entitled to a judgment on the pleadings and qualified immunity and alternatively summary judgment.

4

**POINT I**

**THE LEGAL STANDARDS**

*A.*    ***The Instant Motion***

A complaint is deemed to include any written instrument attached to it as an exhibit, see Fed.R.Civ.10(c); Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985), materials incorporated in it by reference, see Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), and documents that, although not incorporated by reference, are "integral" to the complaint, Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see Cortec Indus., 949 F.2d at 47. Defendants submit, at this early stage of the litigation, that the Defendants are entitled to judgment on the pleadings pursuant to 12(c). It is our contention that based upon the aforementioned law, the warrant documents and the Plaintiff's 50-h testimony are part of the pleadings as the warrant documents are referred to in the Plaintiff's Notice of Claim and the 50-H testimony is also mentioned in the Complaint and while at the time of filing they were not completed, they were completed after the Summons and Complaint were served. However, should this Honorable Court rule differently, then Defendants are amenable to conversion of this motion to a motion for summary judgment pursuant to Rule 56 and nonetheless submit that the Officers are entitled to summary judgment at this early stage and reserve the right to provide affidavits upon the motions conversion. [1] Further, the Defendants submit that the Plaintiff's testimony still represents only the Plaintiff's version of the facts and not the individual officers in line with the "spirit" of qualified immunity which the Defendants also seek in the instant motion.

---

[1] From a procedural perspective, as this Honorable Court is aware, municipalities have the benefit of being allowed - pursuant to the General Municipal Law - to conduct 50-H hearings (essentially an EBT) of the Plaintiff's prior to suit. The testimony adduced by municipalities at this stage - where the matter has not "actually commenced" - provides for a very interesting situation when confronted with making a motion on the pleadings pursuant to 12(c), especially where - as here - qualified immunity is being asserted. In these situations, the Complaint does not represent the "only" source of Plaintiff's allegations as to what transpired, the 50-H testimony also represents the allegations made by the Plaintiff. In the instant matter, the 50-h hearings occurred after the Plaintiff's filed their summons and complaint, but nonetheless occurred and have been utilized to make the instant motion.

**B.    Motion Pursuant to Fed. R. 12(c)**

A motion to dismiss plaintiff's complaint must accept all facts alleged by plaintiff. The standard of review on a motion for judgment on the pleadings under Rule 12(c) is whether the moving party is entitled to judgment as a matter of law" Burns Int'l Sec. Serv., Inc. v. Int'l; Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995). This standard is the same as that applicable to a motion to dismiss for failure to state a claim pursuant to 12(b)(6). Nat'l Ass'n of Pharm. Mfrs. V. Ayerst Lab., 850 F.2d 904, 909 n. 2 (2d Cir. 1988).

**C.    Motion Pursuant to Fed. R. 56**

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir.2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir.2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994)). "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.2005)(quotation marks omitted). When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir.2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R ., 230 F.3d 34, 38 (2d Cir.2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir.1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.1986)).

Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible). Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys, 426 F.3d at 554.

### D.    Qualified Immunity

"As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their actions did not violate those rights." Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir.2004)( "Kerman II" ). The matter of whether a right was clearly established is a question of law, while the matter of whether a defendant's conduct was objectively reasonable is a mixed question of law and fact. Id . In Cowan v. Breen, the Second Circuit explained the process for evaluating claims of qualified immunity in excessive force claims under the analysis laid out by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201-02, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) and preceding cases:

The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. The inquiry is whether the alleged use of excessive force was objectively reasonable. Thus, claims that an officer made a reasonable mistake of fact that justified the use of force are considered at this stage of the analysis. If the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover. If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation. This inquiry focuses on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted....This inquiry adds a 'further dimension' to the qualified immunity

particular police conduct.... And it ensures that all but the plainly incompetent or those who knowingly violate the law are protected from suit. Cowan vs. Breen, 352 F.3d 756, 761 (2d Cir.2003) (citations omitted). Under this standard, summary judgment may be appropriate even when a material fact issue exists on an excessive force claim if the "law did not put the officer on notice that his conduct would be clearly unlawful." Saucier, 533 U.S. at 202. However, summary judgment is not appropriate where material issues of fact exist with regard to both the underlying constitutional violation and the availability of the immunity defense. See Kerman II, 374 F.3d at 109 ("Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, ... if there is such a dispute, the factual questions must be resolved by the fact finder."); Cowan, 352 F.3d at 764 (denying summary judgment because "genuine, material, factual disputes overlap both the excessive force and qualified immunity issues."); Kerman v. City of New York, 261 F.3d 229, 240 (2001)( "Kerman I" )(finding summary judgment on qualified immunity grounds is not appropriate where the parties' versions of the facts differ markedly and the facts in dispute are material to a determination of reasonableness). The same qualified immunity analysis is performed by courts in cases involving unreasonable search and seizure claims under the Fourth Amendment. See, e.g., Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir.2002).

In Robison v. Via, 821 F.2d 913, 921 (2nd Cir. 1987), the Court of Appeals for the Second Circuit held that an officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences show either (a) that it was objectively reasonable for the officer to believe that probable cause existed or (b) that officers of reasonable competence could disagree on whether there was probable cause or reasonable suspicion under Terry v. Ohio . Robison at 921.

Qualified immunity applies to both state law and section 1983 claims. Calamia v. City of New York, 879 F.2d 1025, 1035-36 (2d Cir. 1989).

8

The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. See Saucier Katz, Hunter v. Bryant 502 U.S. 224, 112 S.Ct.534, 60 USLW 3430, 116 L.Ed.2d 589, 60 USLW 3432 (19991); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); Mitchell, supra, 472 U.S., at 526, 105 S.Ct., at 2815; Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); Anderson, supra, 483 U.S., at 646, n. 6, 107 S.Ct., at 3042, n. 6.

## POINT II

### THE FACTS AS REFELECTED IN THE WARRANT DOCUMENTSAND AS TESTIFIED TO BY THE PLAINTIFFS

Plaintiffs in their Complaint, clearly reference their Notices of Claim filed with the City of Mount Vernon   (See copy of the Complaints Annexed hereto collectively as Exhibit "A").  Those Notices of Claim clearly refer to a warrant the Mount Vernon Police Officers had on the day in question when they searched and seized their residence at 58 South 14th Avenue on December 15, 2006 (See a copy of the Plaintiff's Notices of Claim annexed hereto collectively as Exhibit "B").  In this regard, it is the law that the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. (See Zito v. Leasecomm Corp. 02 Civ. 8074, 2004 U.S. Dist. LEXIS 19778, *16-17 (S.D.N.Y. Sept. 30, 2004)(citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).   Additionally, the law also indicates that this Honorable Court can take into consideration documents litigants request the Court to take judicial notice of which the Defendants in this matter are requesting with regard to all the documents associated with the warrant the instant 12(c) motion.  In this regard, annexed hereto as Exhibit "C" and Exhibit "D" are the warrant documents.  Specifically, the Affidavit for a Search Warrant (Exhibit C) and the resultant Warrant Order (Exhibit D).

A review of the documents reveals that Officer Smith submitted an application for a warrant to the City Court of Mount Vernon on December 14, 2006 which included an affidavit which indicated that the Police Department received information from a confidential informant who had proven accurate in the past, about the possibility of "two loaded handguns", drugs and a suspect named "J" at 58 South 14th Avenue, Mount Vernon NY (the affidavit also discusses another address 131 Vista Pl. 3rd Floor and another person "Ghetto" but there is no action with regard to this location or person). The affidavit goes on to request the ability to search all persons found at the address as the location is known to have a "number of parties inside said premises processing narcotics and in possession of a firearm". The affidavit also requests that the search be conducted "without any prior notice due to the fact that the marijuana can be easily destroyed" (See Exhibit "C"). Judge Brenda Dowery-Rodriguez signed the application and on the same day granted the Officer's request by issuing a warrant order which gave the officers the authority to enter the home without knocking first to search the premises for weapons, marijuana and search and seize the suspect J "and any other individuals on the premises at the time of the warrant execution" (See Exhibit "D").

According to the Plaintiffs, 58 South 14th Avenue is "more like a three-family home" (See relevant portion of Plaintiff Jessica Lynch's testimony attached hereto as Exhibit E). On the day in question it had a basement which had two rooms, a first floor and second floor which had living quarters. On December 15, 2006 at approximately 6:30 a.m. Plaintiff Jessica Lynch was in the basement with her four children who include Plaintiffs Elizabeth Lynch, Simon Lynch, Eric Lynch, Infants under the Age of 14 and Ricardo Lynch. On the first floor was Plaintiff Fabian McCalla along with Plaintiff Roslee Hamilton and others not named in this matter. Both Plaintiffs Jessica Lynch and Fabian McCalla's testified at 50-H hearings regarding what transpired on December 15, 2006 at their place of residence  58 South 14th Avenue, Mount Vernon NY was recorded at a hearing conducted on January 14, 2008 a copy of both their transcripts are annexed hereto as Exhibits E and F respectively.

10

## POINT III

## THE DEFENDANTS DID NOT VIOLATE THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

Accepting the Complaint as true, for the purposes of this motion, this Court must examine the officers' actions. Both Plaintiffs testified as to their issue with the search and seizure in question and their testimony reveals the following actions which they complain of: 1) the fact that the officers entered the home with guns drawn and held the guns out during the search on them; 2) that the officers broke the door to enter the home and broke other doors that were locked and a bed when they were searching the premises and 3) that the officers ransacked the apartment when they threw items from dresser draws onto the floor.

Such allegations when reviewing the totality of the circumstances do not rise to the level of a constitutional violation.

*A.     THE OFFICERS ENTRY INTO THE HOME BY FORCE WITHOUT KNOCKING WAS OBJECTIVELY REASONABLE AS THEY RELIED ON THE "NO KNOCK" WARRANT ISSUED BY THE CITY COURT JUDGE*

Based upon the testimony of the Plaintiffs in this action, the officers apparently entered the home without first knocking and banged the door in to gain entry.

Specifically, Plaintiff Fabian McCalla testified to the following:

Page 8 -
Q.     Describe for me how you first learned that there was police presence at the house at 58 South 14th?
A.     I was in bed at the time sleeping. I heard doors bursting down, see guns.
Q.     Did you see the officers
A.     Yes I did

(See Exhibit E)

The officers had secured a "no-knock" warrant from Judge Dowery-Rodriguez in this matter (See Exhibit C). In this regard, the officers had the right and authority to enter the premises without first knocking, thus the ability to enter the home by force. In United States v. Tisdale, 195 F.3d 70, 72-73 (2d Cir.1999), the Second Circuit held that the officers reliance on a

11

no-knock entry warrant was objectively reasonable and for that reason they did not violate the Plaintiffs rights when they entered the home by force. The court stated that "[b]ecause the affidavit contained indicia pointing to the existence of particularized exigent circumstances, the officers' reliance on it was, at the least, not 'entirely unreasonable.' ' Id. at 73 (quoting United States v. Leon, 468 U.S. 897, 923 (1984)). The Court went on to state that "whether or not Judge Knopf should have authorized the no-knock entry based on the evidence before him, the fact that he did authorize it made the officers reliance on the warrant objectively reasonable". The Court further stated that "moreover, because New York state judges do not always authorize no-knock entries based on the presence of guns alone, see Tr. I at 52, there is no evidence to suggest that New York, like Wisconsin in Richards, has abandoned the Fourth Amendment's requirement that officers have at least a reasonable suspicion of danger or destruction of evidence to justify a no-knock entry. 520 U.S. at 385, 394. In this case, the executing officers relied in good faith on Judge Knopf's no-knock authorization, and I conclude they were justified in doing so".

Similarly here, the warrant order absolutely gave the officers the authority to enter without first announcing themselves. Further, in the instant matter since the officers suspected that there could be weapons and easily destroyable narcotics (marijuana) this provided even more justification for a no-knock entry. Consequently, the officer did not violate the Plaintiffs constitutional rights by not knocking or by using a forced entry.

B.    *THE OFFICERS ACTIONS OF HAVING GUNS DRAWN AND HANDCUFFING TWO ADULT MALES, SECURING THE PREMISES WHILE THEY SEARCHED WAS REASONABLE AND DOES NOT AMOUNT TO A VIOLATION OF THE PLAINTIFF'S CONSTITUTIONAL RIGHTS*

Plaintiff's complaint alleges causes of action for unreasonable and excessive force & cruel & unusual punishment. The bases for these allegations can be found in the Plaintiff's testimony. The Plaintiffs have testified that on December 15, 2006 the officers entered the home with their guns drawn and handcuffed certain individuals and in one instance placed one of the handcuffed individuals on the floor. The specific testimony reads as follows:

12

**Testimony of Fabian McCalla: pages 8, 10-11**

Q.   Describe for me how you first learned that there was police presence at the house at 58 South 14th?

A.   I was in bed at the time sleeping. I heard doors bursting down, see guns.

Q.   Did you see the officers?

A.   Yes I did

Q.   How many officers were there in your floor?

A.   There was six or seven officers

Q.   What did they proceed to do?

A.   They proceeded – came in waiving guns, handcuffed me on the bed and was there searching the place.

Q.   How long of a period of time did the police officers stay on the second floor?

A.   They was there from like 5:00 until like after 8:00 in the morning.

Q.   During those hours, describe for me what they did.

A.   Came in waiving the gun, handcuffed me on the bed and searching the place.

Q.   How many were searching?

A.   Approximately all. They were all over the place.

Q.   Did they handcuff anyone else?

A.   No, only me.

Q.   Did they touch you in any other way besides handcuffing you?

A.   Yes

Q.   What did they do?

A.   After I had the white plastic I told them it was too tight and he pulled it up, pulled it more.

Q.   He pulled it more?

A.   Yes

Q.   Then what happened?

A.   It was squeezing even more.

Q.   Did they take off the handcuffs before they left?

A.   Yeah.

Q.   Besides telling them that they were tight, the handcuffs, did you say anything else to the officers?

A.   No, I did not.

13

**Testimony of Jessica Lynch - Pages 12 - 14**

Q.   Tell me how you woke up.

A.   I heard like a running sound and I heard like something came tumbling down the stairs and at the time I reached there I saw the whole door coming in.

Q.   Then what happened

A.   The gun was blazing on all over the place.

Q.   Can you describe what do you mean by that?

A.   They draw the guns and they had the guns out on me and my children

Q.   When you say they, who are you referring to?

A.   The officers of Mount Vernon

Q.   How many officers were there when you first saw them?

A.   I think around – there was around five or six in my section.

Q.   What were they saying?

A.   That's the point. They were not talking

Q.   Tell me what else, if anything they did next

A.   Well they had the gun out, they handcuffed my son and put him on the cold floor.

Q.   Which son are you referring to?

A.   My oldest son.

Q.   Ricardo?

A.   Yes

Q.   So they handcuffed Ricardo?

A.   Yes

Q.   Did they handcuff you?

A.   No.

Q.   Did they handcuff any of the other children?

A.   No but they was telling them to get down on the floor.

Q.   Did they comply did the kids do that, did the kids get on the floor?

A.   No

Q.   What happened?

A.   Because I told them not to

Q.   What did they do?

A.   They just got ---- pulled the gun and my son at the time that's five was four coming out of the room the officer had the gun and my daughter had to say – screaming "My little brother is coming out."

**Page 21 - 23**

Q.    Now, you described that the officers had their guns drawn, there were about five or six officers?

A.    Correct

Q.    They told your children to get on the floor?

A.    Correct

Q.    But they didn't because it was cold?

A.    Correct

Q.    What happened next?

A.    They just started ransacking my whole place.

Q.    Describe that for me

A.    They broke the whole door off, they broke my bed down they threw everything out of my drawers, everything.

Q.    Did they say anything to you?

A.    They were not talking

Q.    What else did they do?

A.    They was just ransacking the whole place and had the gun at all time on me and my children

**Page 27**

Q.    Were you handcuffed during this incident?

A.    No

Q.    What if anything did you say to the officers?

A.    What did I say to the officers?  I asked them what's going on but no one was speaking.

Q.    Anything else?

A.    No.

Q.    Did you ever curse at them?

A.    No I did not

Q.    Did they ever curse at you?

A.    No, they did not

Q.    Did they ever physically touch you in any way?

A.    No, they did not

Q.    During that hour, what were you doing?

A.    We couldn't do anything because gun was appointed at us and right over my son's head.

Q.    That's Ricardo?

A.    Yes.

Q.    What else did they do besides empty out the six drawers and break the bed?

15

A.   They practically went through everything in the basement. They went through everything.

**Page 30 – 31**

Q. Besides your oldest son being handcuffed, were any of the other children handcuffed?
A. No, they were not

Q. Were they touched by the officers in any way?
A. No they were not.

Q. The older son, were his handcuffs removed?
A. The handcuffs was removed and put on by an officer I've known and she put on another one, a plastic one, I think.

Q. Did he seek any medical treatment after the incident?
A. No

In analyzing a claim of excessive force, allowance must be made for the fact that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396, 109 S.Ct. 1865. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers... violates the Fourth Amendment." Id. A warrant to search a home for drugs "implicitly carries with it authority to detain the occupants at the premises while the search is conducted." Speights v. City of New York, Nos. 98 CV 4635(NG)(JMA), 98 CV 4636(NG)(JMA), 2001 WL 797982, *5 (E.D.N.Y. June 18, 2001). See also Michigan v. Summers, 452 U.S. 692, 702-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Further, in Bolden v. Village of Monticello, 344 F.Supp2d 407 (SDNY 2004) the Court stated "in executing a search warrant for drugs, as in this case, it is reasonable for police officers to enter a residence with guns drawn to secure the area and prevent harm to themselves or others. See, e.g., Speights, 2001 WL 797982; Anderson v. United States, 107 F.Supp.2d 191 (E.D.N.Y.2000) ("Anderson III"). While the Courts have gone on to state that the use of force beyond what is reasonably necessary to prevent violence or the destruction of evidence, violates the Fourth Amendment prohibition against unreasonable searches, when one looks to the examples of what Courts have deemed to be unreasonable like in the Anderson III, 107 F.Supp.2d at 198-99 (forcing suspect's head into a garbage can while he was

16

handcuffed raised question of reasonableness) or other cases where the officers used objectionable language and unnecessary physical abuse, such is not the case in the instant matter. Both Plaintiffs have testified that no one was physically or verbally abused. Further, while one adult male was placed onto the floor with handcuffs while the officers searched, such does not violate a persons constitutional rights. See Wright v. Santopietro, 325 F.Supp.2d 79 (D.Conn.2003) where the Court held there is "no excessive force where officers handcuffed individuals and made them lie down in the street while officers searched a vehicle for drugs, but where there was no evidence that officers "hit, punched or kicked" plaintiffs".

In the instant matter the officers acted reasonably when they came into a home looking for a suspect that might have firearms or a home that could have contained firearms and narcotics. Having their guns drawn was reasonable in light of the totality of the circumstances and the handcuffing of only two adult males who could have been the suspect was necessary while they searched the premises. According to the law, the officers herein may use an amount of force reasonably necessary to secure the premises and prevent harm to themselves or others and that is what occurred here.

Further, generally speaking, police have a right to detain individuals with handcuffs found on a premises during the execution of a search warrant. In *Meuhler*, the Supreme Court stated that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." 125 S.Ct. at 1470. It also observed that "[t]he governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises." *Id.* It found that the need to detain multiple occupants "made the use of handcuffs all the more reasonable." *Id.* Regarding the length of detention, the Supreme Court also concluded that the two to three hour detention of four occupants that lasted for the duration of the search of a "gang house" for dangerous weapons was reasonable. *Id.*

17

Considering the factors discussed by the Court in *Meubler*, in the instant matter the mere fact that two people were detained in handcuffs was not unreasonable in light of the circumstances of the execution of the search warrant.

As to the one allegation of Plaintiff Fabian McCalla that the handcuffs were too tight we offer the following in evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists. *See, e.g., Burchett,* 310 F.3d at 944-45; *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001) (plaintiff must show more than de minimis injury).  In the instant case Plaintiff, Fabian McCalla testified that he sought no medical attention as a result of the handcuffs being too tight and testified that the handcuffs were removed prior to the officers leaving.  Further see **Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir.1999)** (claim based on tight handcuffing "is so insubstantial that it cannot as a matter of law" give rise to a Fourth Amendment violation).

C.     *BY LAW THE OFFFICERS CAN FORCE OPEN ANY DOOR OR ITEM WHERE THE ITEMS SUBJECT TO THE SEARCH WARRANT COULD BE LOCATED, THUS THEY DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS*

The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search and by the places in which the officers have probable cause to believe those objects may be found. See Maryland v. Garrison, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). Officers may force open a locked door on the premises if they have probable cause to believe the objects sought are behind it. See United States v. Ross, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 2170-71, 72 L.Ed.2d 572 (1982) ("A lawful search of fixed premises [pursuant to a valid warrant] ... is not limited by the possibility that separate acts of entry or opening may be required to complete the search."); Simons v. Montgomery County Police Officers, 762 F.2d 30, 33 (4th Cir.1985)(warrant to search house authorized officers to enter a locked room), cert. denied, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

In the case at bar, both Plaintiffs testified that the officers forced open certain doors to search the premises on December 15, 2006. Specifically, the Plaintiff's testimony is as follows:

**Testimony of Fabian McCalla – Page 15,17:**

> Q. Was anything damaged in your room
> A. Yes, the closet doors were broken down, the living room door, my room door.
>
> Q. Was the closet door locked?
> A. Yes
>
> Q. Was anything broken in the kids' room?
> A. Just the door to entrance
>
> Q. Was it locked at the time?
> A. Yeah
>
> Q. But the kids were inside sleeping?
> A. Yes, some were sleeping
>
> Q. Besides the doors that you described, was anything else broken on the second floor?
> A. The attic door, entrance to the attic door.
>
> Q. Was that locked as well?
> A. Yeah
>
> Q. You had it screwed shut, basically?
> A. Right

**Testimony of Jessica Lynch – Page 22:**

> A. They just stared ransacking my whole place.
> Q. Describe that for me.
>
> A. They broke the whole door off, they broke my bed down, they threw everything out of my drawers, everything.

The officers had a right to force open the doors to the locations where the weapons and narcotics could have been, so for this reason their actions in this regard did not violate Plaintiffs constitutional rights.

## POINT IV

**IT WAS OBJECTIVELY REASONABLE FOR THE OFFCIERS TO BELIEVE THAT THEIR ACTIONS - ENTERING INTO THE HOME WITH GUNS DRAWN, SECURING PERSONS IN THE HOME WITH HANDCUFFS AND CONDUCTING THEIR SEARCH BY FORCING OPEN DOORS AND CLOSETS WHERE NARCOTICS AND WEAPONS COULD BE STASHED - DID NOT VIOLATE ANY CLEARLY ESTABLISHED RIGHTS OF THE PLAINTIFFS, THUS THEY ARE ENTITLED TO QUALIFIED IMMUNITY**

`Defendants implore this Court to be mindful of the totality of the facts and circumstances confronting the defendants in executing the search warrant. In United States v. Banks, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) the Supreme Court emphasized the totality of the circumstances approach, noting that:

The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization.... Although the notion of reasonable execution must therefore be fleshed out, we have done that case by case, largely avoiding categories and protocols for searches. Instead, we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.... We have, however, pointed out factual considerations of unusual, albeit not dispositive, significance."

Even where a plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. _Anthony v. City of New York,_ 339 F.3d 129 (2d Cir.2003) (internal quotation marks and citations omitted). Police officers are immune from suit unless their judgment "was so flawed that no reasonable officer would have made a similar choice." _Lennon v. Miller,_ 66 F.3d 416, 424-25 (2d Cir.1995).

In the instant case, no one could argue that the officer's actions were so flawed that no reasonable officer would have made a similar choice. When looking at the totality of the

circumstances the officer's actions were arguably reasonable so they are entitled to qualified immunity. To reiterate, the officers acted pursuant to a warrant order which gave them the authority to go to 58 South 14th Avenue to search for weapons and narcotics. The order allowed them to enter without first announcing themselves and they had the ability to search the entire premises. From the Plaintiff's own testimony we know that: 1) the officers did not physically touch anyone, besides the handcuffing of two adult males, 2) did not verbally abuse anyone, 3) did not perform searches of the children or strip search any of the adults, 4) did not insist on the children getting on the floor when Plaintiff Jessica Lynch told them not to go on the floor;. We do know that the officers broke a few doors and threw items out of dresser drawers as they searched and broke a bed however these events do not rise to the level of a constitutional violations and reasonable officers would differ as to whether the officers should have know that these actions violated the rights of the Plaintiff. For the foregoing reasons, all the officers are entitled to qualified immunity.

## POINT V

### PLAINTIFF'S CONSPIRACY CLAIM MUST FAIL

Specificity in pleading is required where conspiracy to deprive constitutional rights is charged. *See e.g., Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.1977); 423 South Salina Street Inc. v. Syracuse, 724 F.2d 26, 27 (2d Cir.1983)*. Where complaints alleging a conspiracy of large dimension, such as this one, have included "conclusory", "vague" or "general allegations", this Circuit has repeatedly dismissed them. *See Ostrer, supra, 567 F.2d at 553* (citations therein). Further, where plaintiffs do not produce evidence in support of their allegations in the face of defendants' denials, summary judgment is appropriate. *Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 (2d Cir.1981)*. As a result Plaintiff's conspiracy claim should be dismissed.

21

## POINT VI

## THE CITY OF MOUNT VERNON IS ENTILED TO SUMMARY JUDGMENT

Plaintiffs, relying on *287 *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), assert that the City of Mount Vernon are liable under 42 U.S.C. § 1983. They argue that the City's failure to properly train and supervise its police officers, to promulgate appropriate guidelines, and to take disciplinary action against the officers constitutes "deliberate indifference" to the rights of plaintiffs. Because we submit that the officers did not violate the constitutional rights of any of the plaintiffs, plaintiffs can have no claim against the City of Mount Vernon under *Monell* for failure to train, supervise, establish proper guidelines, or to discipline. As the Supreme Court held in *Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." (Original emphasis).

Accordingly, the City of Mount Vernon is entitled to summary judgment.

## POINT VII

## PLAINTIFF'S STATE LAW CLAIMS SHOULD FAIL

Plaintiffs have asserted common-law tort claims for gross negligence, negligence and intentional infliction of emotional distress against all. These claims are barred by the doctrine of governmental immunity. It is well-settled that a municipality cannot be sued directly for common-law negligence. *Williams v. City of New Haven*, 243 Conn. 763, 766-67, 707 A.2d 1251 (1998). Likewise, plaintiffs' claims against the individual officers in their official capacities must fail since any claim against them in their official capacities is tantamount to a claim against the City itself. With respect to plaintiffs' claims against the individual defendants in their individual capacities, municipal employees are immune from liability for the performance of governmental acts, as distinguished from ministerial acts. All actions of the defendants that are challenged in this case

22

were governmental acts, *see Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 167-68, 544 A.2d

1185 (1988), and, therefore, the officers are entitled to governmental immunity as to those acts.

The operation of a police department has been held to be a government function, *id.*, as has the

execution of arrest warrants. *See Pagan v. Anderson*, No. 388804, 1991 WL 169530, at *2

(Conn.Super. Aug. 22, 1991). An exception to the rule that a public officer is immune from civil

liability for discretionary acts is when it would be apparent to the officer that a failure to act would

likely subject an identifiable person to imminent harm. *See Evon v. Andrews*, 211 Conn. 501, 559

A.2d 1131 (1989). Here, however, there is no evidence that the actions or inactions of these

officers were likely to subject plaintiffs to imminent harm. We find that the "identifiable-imminent

harm" exception to the general rule of governmental immunity does not apply here.  Further, to

recover for intentional infliction of emotional distress New York law requires that the defendants

conduct be extreme and outrageous, such that it exceeds the bounds of decency.  Howell v. New

York Post Co., 596 N.Y.S.2d 293, 303 (1993).  No such claim can be made even taken the facts

most favorable to the Plaintiffs.  Therefore, all defendants' are entitled to a dismissal of the

Plaintiff's state law and prima facie tort claims.

## CONCLUSION

In sum, the Defendant's are entitled to judgment on the pleadings and all causes of action

should be dismissed as to all of them and the officers are entitled to qualified immunity and

alternatively all defendants are entitled to summary judgment.


RESPECTFULLY SUBMITTED,
HELEN M. BLACKWOOD, ESQ.
CORPORATION COUNSEL

By:    *[signature]*

Nichelle A. Johnson (NAJ 7688)
City Hall
1 Roosevelt Square
Mount Vernon, New York 10550
(914) 665-2366
Attorneys for Defendants

23