UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
ELIZABETH LYNCH, SIMON LYNCH, ERIC       :        08 Civ. 0080 (WCC)
LYNCH, Infants, under the age of 14, by
their mother and natural guardian,       :             ECF CASE
JESSICA LYNCH, and JESSICA LYNCH,
individually and RICARDO LYNCH,          :

                    Plaintiffs,          :

          - against -                    :

CITY OF MOUNT VERNON, THE MOUNT VERNON    :
POLICE DEPARTMENT and POLICE OFFICERS
"JOHN DOE," "RICHARD ROE," fictitious    :
names, true names unknown,

                                         :

                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - X
ROSLEE HAMILTON, an Infant under the     :        08 Civ. 0083 (WCC)
age of 14 years, by her father and
natural guardian, FABIAN McCALLA, and    :             ECF CASE
FABIAN McCALLA,

                                         :

                    Plaintiffs,          :

                                         :

          - against -                              **OPINION**

                                         :        **AND ORDER**

CITY OF MOUNT VERNON, THE MOUNT VERNON    :
POLICE DEPARTMENT and POLICE OFFICERS
"JOHN DOE," "RICHARD ROE," fictitious    :
names, true names unknown,

                                         :

                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                              DELL & LITTLE, LLP
                              **Attorneys for Plaintiffs**
                              1274 RexCorp Plaza
                              Uniondale, New York 11556

JENNIFER J. BLOCK, ESQ.

          Of Counsel

Copies E-Mailed to Counsel of Record

**A P P E A R A N C E S :**   **(continued)**

                                        HELEN M. BLACKWOOD, ESQ.
                                        CORPORATION COUNSEL
                                        CITY OF MOUNT VERNON
                                        **Attorneys for Defendants**
                                        City Hall
                                        One Roosevelt Square
                                        Mount Vernon, New York 10550

NICHELLE A. JOHNSON, ESQ.
Ass't Corporation Counsel

        Of Counsel

**Conner, Senior D.J.:**

Plaintiffs Jessica Lynch, individually and on behalf of her minor children Elizabeth Lynch, Simon Lynch and Eric Lynch; Ricardo Lynch and Fabian McCalla, individually and on behalf of his minor daughter Roslee Hamilton, bring this action under 42 U.S.C. § 1983 for alleged violations of their constitutional rights during a search of their residence by officers of the Mount Vernon, New York Police Department (the "Department").[1]  Defendants are the City of Mount Vernon (the "City"), the Department and Mount Vernon police officers "John Doe" and "Richard Roe."  In the early morning hours of December 15, 2006, officers of the Department entered plaintiffs' residence in search of drugs, illegal firearms and a drug dealer known as "J."  The search, which turned out to be fruitless, was carried out pursuant to a "no-knock" search warrant issued by a Mount Vernon City Court Judge and based primarily on information provided by a confidential informant.

Plaintiffs claim that the search violated their constitutional rights because the warrant authorizing it was not supported by probable cause.  Plaintiffs also claim that the officers subjected them to excessive force during the search.  Defendants now move for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) or, in the alternative, for summary judgment pursuant to FED. R. CIV. P. 56.  We will treat this as a motion for summary judgment and, for the following reasons, grant the motion.

---

[1] Presently before the Court are motions in two related cases: *Lynch v. City of Mount Vernon*, 08 Civ. 0080 (WCC) and *Hamilton v. City of Mount Vernon*, 08 Civ. 0083 (WCC). Both cases arise out of the same series of events, and with the Court's permission the parties have filed identical motion papers in each case.  We will therefore address the two motions as one.

1

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed.[2]

On December 13, 2006, the Mount Vernon Police arrested a person on a charge unrelated to this action. (Defs. Mem. Supp. Mot. J. Pldgs. ("Defs. Mem."), Ex. C (the "Warrant Application").) This person agreed to furnish the police information as a confidential informant (the "CI"). (*Id.*) Based on information from the CI, Mount Vernon Police Officer Smith submitted an affidavit in support of a search warrant for 58 South 14th Avenue, Mount Vernon, New York (the "Residence"). (*Id.*) During a debriefing by members of the Department's intelligence unit, the CI disclosed information about illegal drug activity at certain locations then already under investigation by the Department. (*Id.*) In the opinion of Officer Smith, as sworn in his affidavit, this "proved [the CI's] reliability and credibility regarding illegal activity." (*Id.*)

The CI told members of the Department's intelligence unit that the CI had purchased marijuana from a man known as "Ghetto" on several occasions. (*Id.*) The CI also stated that he or she had gone with Ghetto to the Residence where he or she purchased thirty dollars worth of marijuana from a man known as "J." (*Id.*) While on the premises, the CI observed two loaded handguns on the living room coffee table. (*Id.*)

Based on this information, a Mount Vernon City Court Judge issued a warrant authorizing the Mount Vernon Police to search the Residence for "J," marijuana and related paraphernalia and weapons. (Defs. Mem., Ex. D (the "Search Warrant" or "Warrant").) Because the judge was

---

[2] Because the material facts giving rise to this action are uncontested, the Court has not asked the parties to submit statements of undisputed facts pursuant to S.D.N.Y. LOCAL CIV. R. 56.1. Our primary factual source is the testimony of plaintiffs Jessica Lynch and McCalla at their examinations before trial (Defs. Mem., Exs. E, F.) Both parties rely on this testimony in their briefs and neither party has disputed its accuracy.

persuaded that the property to be seized could be easily and quickly disposed of, the warrant authorized the police to enter the Residence unannounced and at any time, day or night.  (*Id.*)

Officers of the Department executed the Search Warrant on December 15, 2006 at approximately 5:00 a.m.  (Pls. Mem. Opp. Mot. J. Pldgs. ("Pls. Mem.") at 3.)  At the time, plaintiffs Jessica Lynch, Ricardo Lynch, Simon Lynch, Eric Lynch and Elizabeth Lynch resided in the basement of the Residence.  (*Id.*)  Plaintiffs McCalla and Hamilton, who also lived at the Residence, were on the first floor.[3]  (Pls. Mem. at 4; Defs. Mem., Ex. F at 16-17.)

Approximately six or seven police officers entered the Residence unannounced and with their guns drawn.  (Pls. Mem. at 4.)  The officers moved about the Residence with their guns drawn and pointed them at most or all of the plaintiffs.  (*Id.* at 3-4.)  Plaintiffs were not allowed to move around the house during the search.  (Defs. Mem., Ex. E at 29.)  The officers handcuffed McCalla and Ricardo Lynch, the two adult males present.  (Pls. Mem. at 4.)  McCalla claims that when he told one of the officers that his handcuffs were too tight, the officer responded by making them tighter.  (Defs. Mem., Ex. F. at 12.)  McCalla did not seek medical treatment as a result of this incident, however, (*id.* at 19), and there is no indication in the record that it caused lasting injury.  It appears that the officers did not touch any of the plaintiffs other than McCalla and Ricardo Lynch.  (*Id.*; *id.*, Ex. E at 27, 30.)  There is no allegation that the officers were verbally abusive; they apparently said very little during the search.  (*Id.*, Ex. E at 22.)  In carrying out the search, the officers broke open locked interior doors, broke a bed, removed items from dresser drawers and, in the words of Jessica Lynch, "ransack[ed] the whole place."  (*Id.*, Ex. E at 22.)  The search lasted approximately three hours.  (*Id.*, Ex. F at 10.)

---

[3] McCalla is the fiancé of Jessica Lynch's sister.  (Defs. Mem., Ex. E. at 8.)

3

DISCUSSION

I.    **Standard of Review**

Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) or, in the alternative, for summary judgment pursuant to Rule 56. (*See generally* Defs. Mem.) Plaintiffs do not object to treating the motion as one for summary judgment, both parties have relied on information extrinsic to the pleadings in their briefs and there are no material factual disputes. We will therefore treat the motion as one for summary judgment.

A.    **Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The Court must resolve all ambiguity in favor of the non-moving party and draw every permissible factual inference in that party's favor. *See Anderson*, 477 U.S. at 255. The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). When the movant has met that burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P 56(e))

4

(internal citations omitted; emphasis in original).

### B.    Qualified Immunity

Qualified immunity shields government officials from liability for civil damages resulting from their performance of discretionary functions unless their conduct violated a clearly established constitutional right of which a reasonable official would have known.  *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995); *see also Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004); *Lewis v. City of Mount Vernon*, 984 F. Supp. 748, 753 (S.D.N.Y. 1997).  "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act."  *Lennon*, 66 F.3d at 420 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  The objective reasonableness test is satisfied, entitling the official to qualified immunity, if officers of reasonable competence could disagree as to the legality of the challenged act.  *Id.*

### II.    The Validity of the Search Warrant

Defendants argue that because the officers searched the Residence pursuant to a valid Search Warrant supported by probable cause, plaintiffs' Fourth Amendment unlawful search and seizure claim must fail.  (*See generally* Defs. Mem.)  Plaintiffs argue that the Warrant was invalid and the search unlawful because the Warrant was supported only by the word of a single CI who was facing a criminal charge, which could not have provided the probable cause necessary for immunity.  (*See* Pls. Mem. at 7-10.)  And plaintiffs argue that the officers are not entitled to qualified immunity

5

because no reasonable police officer could have believed that the Warrant was valid. (*See id.* at 10-12.)

> The Fourth Amendment of the United States Constitution provides:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

There are three requirements for a valid search warrant: the warrant must be issued by a "neutral, disinterested magistrate[]," the person seeking the warrant must establish "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense" and the warrant must "particularly describe the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotation marks and citations omitted). Plaintiff argues that the second element, probable cause, is not satisfied here.

In deciding whether a search warrant is supported by probable cause, a judge must determine whether "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The existence of probable cause must be determined in light of the totality of the circumstances. *See Gates*, 462 U.S. at 230-31. The Supreme Court has described probable cause as "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. The Court has instructed that "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt.'" *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)) (brackets in original).

6

A magistrate's determination that probable cause exists to support the issuance of a warrant is entitled to "'great deference'" from a reviewing court. *See United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *Gates*, 462 U.S. at 231-32; *Salameh*, 152 F.3d at 113; *Speights v. City of New York*, 2001 WL 797982, at *4 (E.D.N.Y. June 18, 2001). Accordingly, this Court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant." *Salameh*, 152 F.3d at 113. Our role is limited to ensuring that the issuing magistrate had a "'substantial basis'" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Moreover, "the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Under this highly deferential standard of review, a plaintiff challenging a warrant for lack of probable cause "'faces a heavy burden.'" *Speights*, 2001 WL 797982, at *4 (quoting *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991)).

Here, plaintiffs challenge the Search Warrant on the ground that the Warrant Application was based entirely on information from one confidential informant who had been to the Residence only one time. Moreover, the CI was in custody on an unrelated charge, which, according to plaintiffs, made him "undesirable to use as an informant."[4] (Pls. Mem. at 9.) Plaintiffs note that the

---

[4] Plaintiffs cite *Lewis* for the proposition that "a wanted individual is undesirable to use as an informant as per the Administrative Guidelines of the Mount Vernon police." (Pls. Mem. at 9); *see Lewis*, 984 F. Supp. at 752. We can not evaluate this claim since the guidelines are not part of the record before us. But even assuming this is correct, our probable-cause analysis remains the same: plaintiffs cannot show that the decision to use this CI violated their constitutional rights. (The outcome might have been different if Department guidelines absolutely prohibited the use of a "wanted individual" as a confidential informant; in that case, there would be a good argument that no reasonable Mount Vernon police officer would have thought probable cause existed.)

Department did not conduct any independent investigation to determine whether "J" actually lived at the Residence or whether there had been reports of drug dealing there. (*See id.*)

These arguments are not enough to carry the "heavy burden" plaintiffs face in challenging the Search Warrant. First, we note that members of the Department's intelligence unit concluded that the CI was credible and reliable because the CI was able to provide accurate information regarding drug activity at locations that the Department already had under investigation. (*See* Warrant Application.) In other words, although there was no direct corroboration of the CI's information regarding illegal activity at the Residence, members of the Department were apparently able to corroborate his knowledge of illegal activity at other locations, which supports the conclusion that the CI was generally credible and knowledgeable about the drug trade in Mount Vernon. Contrary to plaintiffs' implication, the Department and the issuing magistrate did not simply accept the CI's story without making any effort to verify the CI's credibility. Although plaintiffs are certainly correct in stating that defendants could have done more to corroborate the CI's information, the failure to do so does not invalidate the Search Warrant. Plaintiffs have cited no authority for the proposition that defendants were constitutionally required to seek additional corroboration, or that reliance on information provided by a single confidential informant whom the police and issuing magistrate deem credible is not enough to create probable cause. *See Speights*, 2001 WL 797982, at *4.

In light of the lack of authority mandating a different result, as well as the deference to which the magistrate's probable cause determination is entitled, the Court finds that probable cause existed to support the issuance of the Search Warrant. Therefore, the officers' entry into and search of the Residence pursuant to the Warrant did not violate plaintiffs' constitutional rights, and defendants

are entitled to summary judgment on the unlawful search and seizure claim. *See Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003); *Diaz v. City of New York*, 2006 WL 3833164, at *5 (E.D.N.Y. Dec. 29, 2006); *Warren v. Williams*, 2006 WL 860998, at *16 (D. Conn. Mar. 31, 2006); *Hellman v. Gugliotti*, 279 F. Supp. 2d 150, 155 (D. Conn. 2003); *Bourdon v. Roney*, 2003 WL 21058177, at *5 (N.D.N.Y. Mar. 6, 2003).

Moreover, even if we were inclined to doubt the validity of the Search Warrant, the officers would be entitled to qualified immunity based on their reasonable reliance on it. As the Second Circuit has noted, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (citing *Ventresca*, 380 U.S. at 109); *see also Rincon v. City of New York*, 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005); *Lewis*, 984 F. Supp. at 754. To rebut that presumption, a plaintiff must make a "'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'" *Golino*, 950 F.2d at 870 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

There has been no such showing here. There is no indication whatever that Officer Smith made a false statement, knowingly or otherwise, in his affidavit. Plaintiffs do not dispute any of the facts contained in the Warrant Application; they simply disagree with the conclusion that those facts created probable cause. Likewise, we reject any suggestion that Officer Smith acted with reckless disregard for the truth. As noted above, members of the Department deemed the CI credible based on his knowledge of illegal activity that they were able to corroborate, and that conclusion was a

9

reasonable one.

### III.    <u>Excessive Force</u>

Plaintiffs claim that the police officers subjected them to excessive force by: executing the "no-knock" Search Warrant at 5:00 a.m., holding plaintiffs (including the children) at gunpoint and handcuffing the adult males for the entire duration of the search (about three hours).  (*See* Pls. Mem. at 12-13.)  Plaintiffs argue that "such activity was excessive and unreasonable as the Plaintiffs did not display any violence and did not attempt to hide any evidence."  (*Id.* at 13.)  According to plaintiffs, the police should have determined "[w]ithin a short period" of time that neither "J" nor guns or drugs were present at the Residence, making the three-hour duration of the search (and corresponding handcuffing and holding of plaintiffs at gunpoint) excessive.  (*Id.*)

To establish a section 1983 claim for excessive force, plaintiffs must show that "the force used was excessive or unreasonable in light of the circumstances."  *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 157-58 (S.D.N.Y. 2006) (citing *Graham v. Connor,* 490 U.S. 386, 395-96 (1989)).  In evaluating whether an officer's actions were reasonable, a court must bear in mind "the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 397; *see also Lennon*, 66 F.3d at 425.   Determining the reasonableness of force used in a particular instance "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted).

10

It is well established that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Speights*, 2001 WL 797982, at *5. The government's interest in detention is heightened when the warrant has authorized the police to search the premises for weapons. *See Muehler*, 544 U.S. at 100. Thus, any claim that the officers acted unreasonably simply by detaining plaintiffs during the search must fail.[5]

We do not doubt that the presence of police officers with guns drawn in their home was a traumatic experience for plaintiffs. But the officers' decision to draw their weapons while searching the Residence for guns, drugs and a drug dealer was objectively reasonable. *See Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 419 (S.D.N.Y. 2004); *Rincon*, 2005 WL 646080, at *5; *Anderson v. United States*, 107 F. Supp. 2d 191, 199-200 (E.D.N.Y. 2000).

Plaintiff McCalla alleges that at one point during the search, he told one of the officers that his handcuffs were too tight, and that the officer responded by making them tighter. (*See* Defs.

_____

[5] The constitutionality, in appropriate cases, of no-knock search warrants is clearly established. *See United States v. Banks*, 540 U.S. 31, 36 (2003); *Richards v. Wisconsin*, 520 U.S. 385, 394-96 (1997); *United States v. Tisdale*, 195 F.3d 70, 72 (2d Cir. 1999). Thus, plaintiffs' argument that the officers' entry into the Residence was unreasonable because it was unannounced is meritless. The argument that it was unreasonable for the officers to break down locked interior doors in carrying out the search also fails, since it is an accepted (if regrettable) fact that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia*, 441 U.S. at 258. Although "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment," *United States v. Ramirez*, 523 U.S. 65, 71 (1998), there is no indication that the officers damaged plaintiffs' property to an extent beyond what was necessary to effectuate a complete search of the Residence, pursuant to the terms of the Warrant. As for the fact that the officers emptied dresser drawers during the search, we do not doubt that this resulted in inconvenience to plaintiffs, but the argument that it was a constitutional violation is baseless. *See Lewis*, 984 F. Supp. at 756.

Mem., Ex. F at 12.)  There is no indication in the record that the tightness of the handcuffs injured

McCalla, and he testified that he did not seek medical treatment as a result of the incident.  (*See id.*

at 19.)

Although handcuffs must be reasonably tight to be effective, *see Bratton v. N.Y. State Div.*

*of Parole*, 2008 WL 1766744, at *9 (N.D.N.Y. Apr. 14, 2008), overly tight handcuffing can

constitute excessive force.  *See, e.g.*, *Kerman v. City of New York*, 261 F.3d 229, 239-40 (2d Cir.

2001); *Stokes v. City of New York*, 2007 U.S. Dist. LEXIS 32787, at *40-42 (E.D.N.Y. May 3,

2007); *Warren v. Williams*, 2006 U.S. Dist. LEXIS 18900, at *117-18 (D. Conn. Mar. 31, 2006);

*Gonzalez v. City of New York*, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000).  "[I]n evaluating

the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were

unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight;

and 3) the degree of *injury to the wrists*."  *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215

(E.D.N.Y. 2005) (emphasis in original) (citing *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir.

2002)); *see also Genia v. Parker*, 2007 U.S. Dist. LEXIS 19700, at *71-72 (E.D.N.Y. Mar. 20,

2007); *Fifield v. Barrancotta*, 2008 WL 1800152, at *3 (W.D.N.Y. Apr. 21, 2008).

Here, the first two factors support plaintiffs' claim that McCalla's handcuffs were excessively

tight.  McCalla testified that the cuffs were too tight, and we have no reason to doubt this assertion.

And when he complained to an officer, the officer actually made them tighter.

But the fact that the tight handcuffing did not cause McCalla any continuing injury is fatal

to the excessive force claim.  As noted, McCalla testified that he never sought medical treatment as

a result of the incident.  (*See* Defs. Mem., Ex. F at 19.)  There is a consensus among courts in this

circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond

12

temporary discomfort.  *See, e.g.*, *Bratton*, 2008 WL 1766744, at *9-10; *Hamlett v. Town of Greenburgh*, 2007 WL 119291, at *3 (S.D.N.Y. Jan. 17, 2007); *Drummond v. Castro*, 522 F. Supp. 2d 667, 679 (S.D.N.Y. 2007); *Grant v. City of New York*, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007); *Golio v. City of White Plains*, 459 F. Supp. 2d 259, 265 (S.D.N.Y. 2006); *Vogeler v. Colbath*, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005); *Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) ("Plainitff's allegation of sore, yet uninjured, wrists simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation. Plaintiff's claim of excessive force fails."); *Gonzalez*, 2000 WL 516682, at *4.  As one court explained: "handcuffing can give rise to a § 1983 excessive force claim where plaintiff suffers an injury as a result.  However, if the application of handcuffs was merely uncomfortable or caused pain, that is generally insufficient to constitute excessive force." *Gonzalez*, 2000 WL 516682, at *4 (internal citations omitted).  Because there is no evidence that the tight handcuffing injured McCalla, and plaintiffs do not claim that it did, it did not constitute excessive force.

Finally, plaintiffs' argument that McCalla and Ricardo Lynch were handcuffed for an excessively long amount of time is without merit.  (*See* Pls. Mem. at 13.)  The officers were searching the Residence for drugs, guns and a drug dealer.  It was therefore objectively reasonable for them to handcuff McCalla and Ricardo Lynch (the two adult males present) for the sake of the officers' safety and that of everyone else present. *See Muehler*, 544 U.S. at 100.  As the Supreme Court has noted, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation."  *Summers*, 452 U.S. at 702-03. Moreover, courts have dismissed excessive force claims based on handcuffing lasting as long or

longer than that involved here.[6]  *See, e.g.*, *Muehler*, 544 U.S. at 100 (two to three hours); *Johnson v. City of New York*, 940 F. Supp. 631, 637 (S.D.N.Y. 1996) (four to five hours).  The decision to leave McCalla and Ricardo Lynch handcuffed for the duration of the search was objectively reasonable.


IV.    __Municipal Liability__

Plaintiffs have named the Department and the City as defendants.  They allege, in sum, that the Department and the City are liable under the rule of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because they failed to properly train the police officers and maintained policies and customs that encouraged excessive force and deliberate indifference to the constitutional rights of citizens.  (*See* Complt. ¶¶ 32-36.)[7]  The claims against the Department are dismissed because the Department, as an agency of a municipality, is not a "suable entity" under section 1983.  *See Lewis*, 984 F. Supp. at 756 n.2.  And since there was no violation of plaintiffs' constitutional rights, the City has no liability under the rule of *Monell*.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("[A] municipality cannot be liable for inadequate training or supervision when the officers involved . . . did not violate the plaintiff's constitutional rights."); *Dodd v. City of Norwich*, 827 F.2d 1, 8 (2d Cir. 1987); *Batista v. City of New York*, 2007 U.S. Dist. LEXIS 71905, at *20-21 (S.D.N.Y. Sept. 25, 2007).

---

[6] Plaintiffs' related conclusory assertion that the search lasted an unreasonably long time – that the officers should have realized "[w]ithin a short period" that neither "J" nor any contraband would be found (Pls. Mem. at 13) – is completely unpersuasive.

[7] The Complaints in these two related actions are identical in substance.

## V.    Section 1983 Conspiracy and State Law Tort Claims

In their Complaints, plaintiffs assert claims of section 1983 conspiracy and common law negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress and prima facie tort. (*See* Complt. ¶¶ 37-44.) By failing to respond to defendants' arguments for dismissal of the section 1983 conspiracy claim, plaintiffs have abandoned it. *See Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007) (Conner, J.); *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998) (Conner, J.).

The tort claims must be dismissed on the basis of governmental immunity. Under New York law, government officers are immune from tort liability based on "official action involv[ing] the exercise of discretion . . . even if resulting from negligence or malice." *Tango by Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983). Likewise, municipalities are immune from liability based on the discretionary acts of their employees, including police officers – provided the officers' actions were "not inconsistent with acceptable police practice." *Arias v. City of New York*, 802 N.Y.S.2d 209, 211 (App. Div. 2005); *see also McCormack v. City of New York*, 80 N.Y.2d 808, 811 (1992); *Lubecki v. City of New York*, 758 N.Y.S.2d 610, 617 (App. Div. 2003); *Rodriguez v. City of New York*, 595 N.Y.S.2d 421, 426-27 (App. Div. 1993). Because the actions plaintiffs complain of were discretionary in nature, *see Dalia*, 441 U.S. at 257, and because there is no indication they violated acceptable police practice or Department policy, defendants are entitled to governmental immunity on the state law tort claims.

## SUMMARY

This Court is acutely sympathetic with plaintiffs, whose home was forcibly entered, and who

15

were rousted from their sleep, menaced with drawn handguns, confined for three hours with the adult males uncomfortably or even painfully handcuffed while their entire home was ransacked, without uncovering the slightest evidence of wrongdoing.  But the Court must also be sensitive to the public necessity of enforcing the law and protecting those who do so.  Here the police officers acted pursuant to a lawful warrant, issued on information provided by an informant of proven reliability, who reported that he or she had purchased drugs in plaintiffs' home and that handguns were in evidence there.  In such circumstances, it was reasonable for the warrant to authorize forced entry and for the officers to enter before dawn with drawn firearms and to immobilize the occupants during an extensive search.  If the officers had not taken such precautions for their own safety, the consequences might have been infinitely more serious for them and their families than the substantial but temporary inconvenience and fright suffered by plaintiffs.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is granted, and both of the above-captioned actions are dismissed with prejudice but without costs.  The Clerk's Office is directed to enter judgment in favor of defendants in both of the above-captioned actions.


SO ORDERED.

Dated: White Plains, New York
       June 13, 2008

                                        _William C. Conner_
                                        Sr. United States District Judge

16